IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CASEY DYE,**

      **Plaintiff,**

**v.**                                           **CIVIL ACTION NO. 1:23-CV-45**
                                                                  **(KLEEH)**

**SANTANDER CONSUMER USA INC.**
**d/b/a CHRYSLER CAPITAL,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING MOTION PURSUANT TO FEDERAL ARBITRATION ACT [ECFS NO. 12, 16]**

Pending before the Court is Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital's ("Chrysler Capital" or "Defendant") *Motion Pursuant to Federal Arbitration Act* [ECF No. 12] and *Supplement to Motion to Stay Pursuant to Section 3 of the Federal Arbitration Act* [ECF No. 16]. For the reasons discussed herein, Defendant's motions to stay the proceedings are **DENIED**.

**I.   BACKGROUND**

Plaintiff Casey Dye entered into an auto loan agreement in July 2022. ECF No. 3, Compl. ¶ 16. Chrysler Capital undertook the servicing rights of Plaintiff's auto installment retail contract. Id. at ¶ 17. Plaintiff's agreement with Chrysler Capital is governed by a Retail Installment Contract and Security Agreement. ECF No. 13. Chrysler Capital provided multiple methods for Plaintiff to make her car payment. ECF No. 13. One particular method allowed for Plaintiff to use a third-party platform, ACI

Payments Inc. ("ACI"), to pay her bill with a debit card. ECF No. 17. Plaintiff alleges that Chrysler Capital improperly charged her $2.75 to pay her car payment with a debit card. ECF No. 3, Compl. ¶ 18. Plaintiff further alleges that Chrysler Capital illegally passes the cost of debt collection servicing to consumers and upcharges for the service. Id. at ¶ 13.

### A. ACI-DYE AGREEMENT

Plaintiff's use of ACI's platform was governed by ACI's Terms and Conditions. The Terms and Conditions state that ACI provides a money transfer (or payment) on behalf of a sender – here, Plaintiff. ECF No. 13-1. The service is provided to the sender, Plaintiff, and not the recipient, Chrysler Capital. Id. The Terms and Conditions further state "ACI Payments, Inc. is not involved in the administration or collection of Your account with the Receiver, nor is ACI Payments, Inc. involved or associated with the goods and/or services provided by Receiver." Id. The Terms and Conditions further provide:

> "OTHER THAN OUR AGREEMENT WITH THE RECIEVER TO PROVIDE YOU ACCESS TO THE ACI PAYMENTS, INC. SERVICE, ACI PAYMENT INC. IS NOT AFFILIATED WITH THE RECIEVER . . . ACI PAYMENTS, INC. SHALL HAVE NO RESPONSIBILITY OR LIABILITY FOR RECEIVER'S OBLIGATIONS TO YOU. YOU AGREE THAT ACI PAYMENTS, INC. SHALL HAVE NO LIABILITY FOR THE WRONGFUL ACTS, NEGLIGENCE OR ERRORS OF THE RECEIVER . . . ACI PAYMENTS, INC. IS NOT INVOLVED IN THE COLLECTION OF YOUR DEBT." Id.

The Terms and Conditions reiterate that "Your [Plaintiff] agreement with the Account Provider [Chrysler Capital] governs Your use of an Account and sets forth Your rights and liabilities as Account Holder of an Account" and that "ACI Payments, Inc. is not responsible for actions taken by the Account Provider." Id.

Of important relevance here, the ACI Terms and Conditions also include an arbitration agreement. ECF No. 13. The ACI arbitration agreement provides in pertinent part that "any dispute arising from or relating to the Payment transaction shall be resolved by final and binding arbitration." Id. Though not a party to the ACI arbitration agreement, Chrysler Capital argues that it is entitled to enforce the arbitration agreement, within the ACI Terms and Conditions, as a nonsignatory and compel Plaintiff to arbitrate her claims. ECF No. 13.

## II.  APPLICABLE LAW

The Federal Arbitration Act ("FAA") governs written agreements to arbitrate a controversy arising out of a contract. An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court must stay any suit or proceeding pending arbitration. 9 U.S.C. § 3. Federal law requires a "strong federal policy in favor of enforcing arbitration agreements." Hayes v. Delbert Servs. Corp., 811 F.3d

666, 671 (4th Cir. 2016) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Of course, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (internal citation omitted). "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." May v. Nationstar Mortg., LLC, No. 3:12-CV-43, 2012 WL 3028467, at *4 (N.D.W. Va. July 25, 2012) (internal citation omitted). As such, "the district court must determine — as a condition precedent to the entry of any § 3 stay or § 4 order compelling arbitration — whether that party is entitled to enforce the arbitration agreement under state contract law." Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 286-87 (4th Cir. 2023).

In West Virginia[1], "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Bluestem Brands, Inc. v. Shade, 239 W. Va. 694, 702, 805 S.E.2d 805, 813 (2017) (quoting Int'l Paper Co. v.

---

[1] The Court relies upon West Virginia law in evaluating whether Chrysler Capital can compel arbitration in this matter because, as pointed out in Plaintiff's opposition briefing, applying New York law to this dispute improperly presumes that the ACI contract applies in any way to Chrysler Capital and Plaintiff's relationship. ECF No. 17.

Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000)).

> A non-signatory to a written agreement requiring arbitration may utilize the estoppel theory to compel arbitration against an unwilling signatory when the signatory's claims make reference to, presume the existence of, or otherwise rely on the written agreement. Such claims sufficiently arise out of and relate to the written agreement as to require arbitration.

Syl. Pt. 4, Bluestem Brands, Inc., 239 W. Va. 694, 805 S.E.2d 805; Syl. Pt. 3, W. Va. Dep't of Health & Hum. Res. v. Denise, 245 W. Va. 241, 858 S.E.2d 866, 868 (2021). However, "[t]he fact that, in appropriate circumstances, courts may apply estoppel to compel arbitration at the behest of a non-signatory does not mean that we will rush to do so. Estoppel must not be applied without 'tak[ing] into consideration the relationships of persons, wrongs and issues.'" W. Va. Dep't of Health & Hum. Res., 245 W. Va. at 246, 858 S.E.2d at 871 (quoting Bluestem Brands, 239 W. Va. at 702, 805 S.E.2d at 813) (emphasis in original). Accordingly, a Court must consider whether "interests of justice, morality and common fairness" dictate applying estoppel. Id. (quoting Bayles v. Evans, 243 W. Va. 31, 41, 842 S.E.2d 235, 245 (2020)).

"[T]he trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of

the arbitration clause within the four corners of the contract. . . ." Chesapeake Appalachia, L.L.C. v. Hickman, 236 W. Va. 421, 436, 781 S.E.2d 198, 213 (2015). With this in mind, a court "must determine whether the parties [to an arbitration agreement] intended, based on the plain language of the [a]rbitration [a]greement, that disputes with third-party nonsignatories be subject to binding arbitration." GMS Mine Repair & Maint., Inc. v. Baize, 2022 WL 866268, at *6 (S.D.W. Va. Mar. 22, 2022), appeal dismissed, No. 22-1356, 2022 WL 4546874 (4th Cir. May 26, 2022). In GMS Mine Repair and Maintenance, the subject arbitration agreement only contemplated disputes "arising out of, in connection with, or relating to [the Plaintiff's] employment with GMS." Id. The Court concluded that the parties' intention was to limit the scope of arbitrable disputes to those between Plaintiff and GMS. Thus, the Court found that the three nonsignatories could not compel arbitration and the arbitration agreement did not cover disputes with third-party nonsignatories. Id.

### III. DISCUSSION

Defendant moves the Court to stay this action pursuant to Section Three of the Federal Arbitration Act. In support of its position, Defendant argues that the subject dispute falls within the ambit of the ACI arbitration agreement because it arises from or relates to payment transactions she made using ACI's services.

6

ECF No. 13. Though not a party to the ACI-Dye agreement, Defendant argues that it can enforce the arbitration clause as a nonsignatory pursuant to state common contract law. Id. Defendant contends it can compel arbitration through equitable estoppel because Plaintiff's claims against Chrysler Capital are inextricably intertwined with her use of ACI's payment service. Id. Importantly, Defendant claims that Plaintiff's agreement with ACI gives rise to the fee at issue and that Plaintiff will need to reference and rely upon the ACI Terms and Conditions to pursue her claim against Chrysler Capital. Id. Thus, Defendant contends that Plaintiff must arbitrate this claim because she agreed to ACI's Terms and Conditions, ACI provided the money transfer services in exchange for the transfer fee, and Plaintiff did not opt out of the arbitration agreement. ECF No. 18.

Conversely, Plaintiff argues that Chrysler Capital cannot compel arbitration and is not entitled to enforce the arbitration agreement within the ACI Terms and Conditions. ECF No. 17. Plaintiff contends that the ACI Terms and Conditions do not cover the relationship between Chrysler Capital and Plaintiff because it carves out liability for or affiliation with debt collectors. Id. Plaintiff further asserts that her statutory claim against Defendant would still stand if it had charged her the $2.75 fee directly, and thus the claim is not inextricably intertwined or

interdependent upon the ACI agreement. Id. Plaintiff further reiterates that her claim against Defendant alleges that Chrysler Capital violated the West Virginia Consumer Credit Protection Act by charging the $2.75 fee without providing for such a fee in the Retail Installment Sales Agreement. Id. In the alternative, Plaintiff contends that Chrysler Capital waived its arbitration defense by actively litigating this matter and pursuing discovery in support of a summary judgement motion.[2]

For the reasons discussed herein, Defendant's Motions to Stay [ECF Nos. 12, 16] are **DENIED**.

### A. Chrysler Capital cannot enforce the ACI arbitration agreement contained within the Terms and Conditions.

Defendant cannot compel Plaintiff into arbitration because the ACI Terms and Conditions' arbitration agreement does not contemplate enforcement by a nonsignatory Account Provider. While there are certainly instances where a nonsignatory can compel arbitration under West Virginia law, those factors are not present here. Plaintiff's claim against Chrysler Capital does not presume the existence of the ACI Terms & Conditions because the basis for the lawsuit is that the Retail Installment Contract and Security Agreement — in which Plaintiff is a party and Defendant was assigned — does not provide for transaction fees. Thus, this

---

[2] The Court does not rule upon Plaintiff's waiver argument because, as discussed herein, Defendant is not entitled to enforce the ACI arbitration agreement.

agreement, and not the ACI Terms and Conditions, governs the parties' relationship.

Furthermore, the plain language of the ACI Terms and Conditions make clear that ACI did not intend to entangle itself with Chrysler Capital or Plaintiff's payment to Chrysler Capital. See ECF No. 13-1 (""ACI Payments, Inc. is not involved in the administration or collection of Your account with the Receiver, nor is ACI Payments, Inc. involved or associated with the goods and/or services provided by Receiver."). The fact that ACI explicitly denounces any affiliation with Chrysler Capital (the receiver) or any liability for Chrysler Capital's actions supports that Defendant does not have the right to enforce the Terms & Conditions as a nonsignatory. As argued by Plaintiff, it would be contradictory for Defendant to be able to rely upon ACI's arbitration agreement when ACI went to great lengths to distance itself from Chrysler Capital and its actions. The Terms and Conditions are clear that ACI has no relationship with Defendant "OTHER THAN OUR AGREEMENT WITH THE RECIEVER TO PROVIDE YOU ACCESS TO THE ACI PAYMENTS, INC. SERVICE." Id. The Terms and Conditions likewise expressly and specifically disclaim the very issue Plaintiff seeks to litigate here – "ACI PAYMENTS, INC. IS NOT INVOLVED IN THE COLLECTION OF YOUR DEBT." Id.

Moreover, the language in the ACI arbitration agreement is not so broad as to incorporate Plaintiff's claims against Defendant. The arbitration agreement only covers "any dispute arising from or relating to the Payment transaction," and the Terms and Conditions clarify that ACI is not associated with Chrysler Capital's goods or services. Id.

Thus, the interests of justice, morality, and common fairness do not support requiring Plaintiff to arbitrate her claims against Chrysler Capital when the Retail Installment Contract and Security Agreement did not include an arbitration clause and the ACI Terms and Conditions do not encompass claims involving third-party Account Providers, like Defendant.

## IV.   CONCLUSION

For the reasons stated herein, Defendant's *Motion Pursuant to Federal Arbitration Act* [ECF No. 12] and *Supplement to Motion to Stay Pursuant to Section 3 of the Federal Arbitration Act* [ECF No. 16] are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:** January 23, 2024

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA